Calvin **COOK**, Kenneth Cagle, George Hattabough, Ronald Bartlett and Wilbert Fisher, **Plaintiffs**,

v.

The **DIXIE CUP DIVISION OF AMERICAN CAN COMPANY**, a Corporation, **Defendant**.

**Civ. A. No. 1967.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

Aug. 2, 1967.

Harper, Young, Durden & Smith, Fort Smith, Ark., for plaintiffs.

Edgar E. Bethell, Fort Smith, Ark., for defendant.

OPINION

JOHN E. MILLER, Senior District Judge.

On February 20, 1967, the defendant filed its motion, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment upon the issues contained in the allegations of paragraph V of the complaint "for the reason that there are no genuinely controverted issues of fact, and for the reasons stated in the Memorandum in support of this motion, defendant is entitled to judgment as a matter of law." The motion was supported by the affidavit of M. A. Reinhard, Manager of the Dixie Products Plant of American Can Company in Fort Smith, Arkansas, and brief of defendant.

On April 22, 1967, the plaintiffs filed a response to the motion for summary judgment, in which they stated:

"That there are genuine controverted issues of fact before the Court in the above entitled cause, that no summary judgment should be entered against the plaintiffs in this cause and that said issues of fact should be

properly presented before the Court as required according to law."

Attached to the response is the affidavit of Ronald D. Bartlett, one of the named plaintiffs, and a brief in opposition to the motion for summary judgment.

The plaintiffs are citizens of Arkansas and residents of the City of Fort Smith. The defendant, Dixie Products Plant of American Can Company, is a corporation having an office and a place of business in the City of Fort Smith, Sebastian County, Arkansas. The defendant, usually referred to as the Dixie Cup Division of American Can Company, was and is now engaged in the manufacture of cups and plates of different sizes and materials and related products. The American Can Company is a corporation incorporated under the laws of the State of New Jersey and is authorized to do business in the State of Arkansas. The court has jurisdiction of the parties and the subject matter.

The plaintiffs are employees of the defendant, and commenced this action to enjoin the defendant from violating 42 U.S.C.A. § 2000e–2, which provides:

"(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

The above is section 703(a) (1) and (2) of the Civil Rights Act of 1964, 78 Stat. 241.

The material and controverted allegation in the complaint appears as paragraph V, and is as follows:

"That the defendant, an employer having employees engaged in commerce and in the production of goods for commerce, as aforesaid during the period since July 2, 1965, has repeatedly violated, and is now violating the provisions of the Act by discriminating, within the aforesaid establishment in which such employees are employed, between employees on the basis of sex in the following particulars, to-wit:

"(a) By paying wages to employees in such establishment at rates less than the rates at which defendant pays wages to employees of the opposite sex in such establishment for equal work on jobs, the performance of which requires equal skill, effort and responsibility, and which are performed under similar and comparable working conditions, in that the defendant has created two separate departments, Forming Machine (A.M.-P.M. shifts) and Forming Machine (Night Shift). That the classifications within said departments are the same; the functions within the classifications are the same, but that the employees of Forming Machine (A.M.-P.M. shifts) are females and the employees of Forming Machine (Night Shift) are males. That the employees on the A.M.-P.M. shifts earn sums which are $.17 per hour less than those of the Night Shift. That said departments were created by the company and serve the purpose of segregating the male employees and the female employees and to permit the discrimination as heretofore alleged.

"(b) In limiting, segregating and classifying employees in a way which deprives the employees of employment opportunities and adversely affects their status because of sex in that because of the formation of the two separate departments as aforesaid, the seniority of said employees is limited to said departments and as a result thereof, the male employees being segregated to the Night Shifts are not allowed to 'bump' for positions in the A.M.-P.M. shift and the female employees are denied the right to obtain

positions as aforesaid in the Night Shift.

"(c) In regard to the incidents of employment such as shift preference, bidding on jobs and layoff and recall, rights include sex as a factor in violation of the Act."

The gist of the claim of plaintiffs is that the defendant is violating the provisions of the Act by discriminating within the establishment in which such employees are employed between employees on the basis of sex, by paying wages to employees at rates less than the rates at which it pays wages to employees of the opposite sex, for equal work on jobs which require equal skill, effort, and responsibility, under similar and comparable working conditions; that the defendant created two separate departments, Forming Machine (A.M.-P.M. Shifts) and Forming Machine (Night Shift); and that said departments were created by defendant to serve the purpose of segregating the male employees and the female employees and to permit discrimination; that the seniority of employees is limited to the departments, and that the male employees, because of being segregated to the night shifts, are not allowed to "bump" for positions in the A.M.-P.M. shift, and the female employees are denied the right to obtain positions in the night shift.

The only question of fact is whether the defendant is discriminating between male and female employees, and the court is convinced after a consideration of the affidavit of M. A. Reinhard, Manager of defendant, with its exhibit, and the affidavit of the plaintiff Ronald Bartlett, that there is no genuine issue of fact, and that under the applicable law the defendant is entitled to judgment as a matter of law.

Attached to the affidavit of M. A. Reinhard is a document designated "Labor Contract Interpretation," which provides that whenever reductions in force affect night shift operators, the employees so affected may replace A.M.-P.M. operators in line with their plant seniority. When these moves are made, the applicable rate ($1.85) and job duties will be in force.

"Whenever reductions in force affect A.M. and P.M. Operators, the employees so affected may replace night shift Operators in line with their plant seniority. In this instance, however, the employees must demonstrate that they can perform all of the duties of the job over the full work cycle during the whole shift on a daily basis. When this has been demonstrated, the employees will be deemed to have the necessary 'previous experience' and will receive the applicable rate ($2.-02)."

On the brief in opposition to the motion for summary judgment, the plaintiffs stated:

"The essential factor for the court to consider is simply this, if the operation of the various machines is the same for the personnel operating it on the Nite Shift and the Day Shifts, these employees should be paid the same hourly rate for the services which they perform and they should be able to 'bump' according to seniority within the department regardless of the Shifts."

The defendant admits that at one time and for many years it used men only in the Forming Machine Department (Night Shift) and used women only in the Forming Machine Department (A.M.-P.M. Shifts). Evidently the Union representing the employees thought there were good and sufficient reasons for that practice, but those reasons are academic since Congress enacted the Civil Rights Act of 1964.

Before the plaintiffs commenced this action on February 5, 1966, the defendant had discontinued the practice and policy of confining assignments to the two Forming Machine Departments to one sex to the exclusion of the other. The defendant and the Union representing the employees, on January 17, 1966, formally adopted the interpretation of the collective bargaining agreement

which permits men to claim jobs in the Forming Machine Department (A.M.-P.M. Shift) in the event of a reduction of force, and permits women to claim jobs in the Forming Machine Department (Night Shift) under the same circumstances. This action abolished the practice complained of in paragraph V of the complaint.

In the affidavit of M. A. Reinhard, it is stated:

"While there have been no requests by Cup Machine Operators on any of the shifts for assignment to others in connection with reductions in force, there have been a number of instances in which the changed policy regarding eligibility for job vacancies has been implemented. The following named male employees have entered bids on job vacancies in the Forming Machine Department (A.M. and P.M. Shifts) and have had one or more bids accepted; Leslie Watson; Billy Dennis; Calvin Cook; Elzie Harris; Lee Bolton and Hubert Mullicane. One female employee, Barbara Loris, entered a bid on a vacancy in the classification 'Cup Machine Operator (Night Shift)' which was accepted by the Company, but that employee withdrew her request for the vacancy before actually being assigned to the vacancy.

"Effective October 1, 1966, the Company and the Union revised their Collective Bargaining Agreement to eliminate any separation of the Forming Machine Departments, and since that date, only one Department is recognized. There is nothing in the Agreement requiring or permitting discrimination or distinction in the assignment of males or females to the classification of Cup Machine Operator on the A.M.-P.M. Shifts, or on the Night Shift.

"There still exists a differential in the rate of pay for Cup Machine Operators (A.M.-P.M.) as compared to Cup Machine Operator (Night Shift). The former are paid $1.94 per hour, plus full bonus, and the latter are paid $2.12 per hour, plus full bonus, but the applicable rate is paid to any employee assigned to the classification, regardless of sex."

The Civil Rights Act of 1964 deals with many subjects, under title:

   I.   Voting Rights.

   II.   Injunctive Relief against Discrimination in Places of Public Accommodation.

   III.   Desegregation of Public Facilities.

   IV.   Desegregation of Public Education.

   V.   Commission on Civil Rights.

   VI.   Nondiscrimination in Federally Assisted Programs.

   VII.   Equal Employment Opportunity.

   VIII.   Registration and Voting Statistics.

   IX.   Intervention and Procedure after Removal in Civil Rights Cases.

   X.   Establishment of Community Relations Service.

   XI.   Miscellaneous.

Subsection (e) of Section 703 of Title VII, 42 U.S.C.A. § 2000e–2(e), provides:

"Notwithstanding any other provisions of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees * * * on the basis of his * * * sex * * * where * * * sex * * * is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise * * *."

The United States Law Week of July 25, 1967, Volume 36, No. 4, at page 1013, refers to the decision of the United States District Court for Southern Indiana of Bowe v. Colgate-Palmolive Co., 272 F. Supp. 332. At 36 L.W. 2055 it is stated:

"The internal content of the 1964 Civil Rights Act, 42 U.S.C. 2000(e)–

2(e), 33 LW 1, discloses that, although unlimited discrimination on the basis of sex is forbidden, all discretion or discrimination was not removed from the employer's prerogative. Neither a test of 'strict necessity' nor one of 'traditional role' comports with the Act. If, however, the test of reasonableness as developed in the many decisions interpreting the Equal Protection Clause is reliable enough to guide legislators, the same standard ought to afford guidelines for business.

"Under the Act, sex is not equatable with race. Sex, along with religion and national origin, is treated entirely separately from color, and in generic terms, not individual terms. Sexual discrimination is permissible when 'reasonably necessary to the normal operation of that particular business or enterprise,' and the Act specifically authorizes an employer in a notice or advertisement for employees to show 'a preference, limitation, specification, or discrimination based on sex as a bona fide occupational qualification.' The Equal Employment Opportunity Commission has also indicated that at least in the area occupied by state restrictions, selection or discrimination based on sex generally was and is permissible. Significant and meaningful biological and psychological differences between the sexes, especially in connection with physical demands, are to be considered valid bases for a choice between women as a class or group and men as a class or group."

Subsection (h) of § 703 of Title VII, 42 U.S.C.A. § 2000e–2(h), provides:

"Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, * * * provided that such differences are not the result of an intention to discriminate because of * * * sex * * *. * * * It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29."

Section 206(d) of Title 29, referred to above, was enacted June 10, 1963, as Section 3 of the Equal Pay Act of 1963, 77 Stat. 56, and provides:

"No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

The case of Ward v. Firestone Tire & Rubber Co., (W.D.Tenn.1966) 260 F. Supp. 579, was a case commenced by plaintiff against defendants, in which plaintiff alleged that he had been deprived of an employment opportunity because of his male sex. He relied on the identical statute relied upon by plaintiffs

in the instant case. In the statement of facts, the court at page 581 said:

"Plaintiff, who has been an employee in the Firestone plant at Memphis for twenty-eight years and is a member of the defendant Local and International, sought a transfer from his job as a bias machine operator, which he has held for fifteen years, to that of a band builder helper. His request was denied by Firestone, and the Local and International refused to process a grievance, on the ground that, under the agreement between the Local and Firestone, plaintiff had no right to the transfer. Under this agreement the job which plaintiff sought was earmarked as a 'light work' job for women and for men who had physical defects. Plaintiff contends that he desired the job (1) because he could make more money and (2) because the requested job would not, as did his present job, irritate his weak back by requiring turning his body at the waist. It is undisputed that the job plaintiff sought was of a lower classification."

The defendants contended that the plaintiff had not been discriminated against within the meaning of the statute, because he would not in fact receive the tangible benefits that he claimed he sought. The court, in disposing of the contention of the plaintiff, said at page 581:

"Further, as defendants correctly contend, even if plaintiff had shown that the job he sought would actually bring to him the tangible benefits that he desired, still he would not be entitled to relief if it can be shown, pursuant to Sec. 2000e–2(e), that the earmarking of this job for women (and men with physical disability) had a bona fide relation to occupational qualification and reasonably necessary to normal operation of this business and that the defendants were bona fide in

the administration of this program. Here it appears that certain jobs in the plant, including the one plaintiff sought, had for several years been reserved for women and, upon the advent of the Act, also for physically restricted men. We find as a fact that, * * in reserving certain jobs for women and restricted men, Firestone and the Local were bona fide in the sense that they acted with honest purpose and acted within reason in their effort to accomplish the end that is expressly recognized as legitimate by Sec. 2000e–2(e) (2) of the Act. Therefore, because of this specific exception in the Act, plaintiff cannot properly claim discrimination when he was not allowed to exercise his seniority to 'bump' a woman in this light work category."

Under the facts as established by the affidavit of M. A. Reinhard, Manager of defendant, together with the exhibit attached thereto, the plaintiffs have not been and are not now being discriminated against because of sex.

The affidavit of Ronald Bartlett, one of the plaintiffs, attached to the response of plaintiffs to the motion for summary judgment discloses that the expressed dissatisfaction of the plaintiffs does not arise from any violation of the law on the part of the defendant. Evidently the plaintiffs are not pleased with the action of their Union and the defendant in the over-all operation of the plant, but in the opinion of the court the defendant in connection with the Union has been and is acting with honest purpose and within reason in its effort to accomplish the end that is expressly recognized as required and legitimate by the Act.

Therefore, the motion of defendant for summary judgment should be sustained, and an order is being entered today sustaining the motion and dismissing the complaint of the plaintiffs.